UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                )
                                      )    **JUDGE RICHARD L. SPEER**
Tirrell Brenneman/Kristian Brown      )
                                      )    Case No. 08-33644
    Debtor(s)                         )
                                      )

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). (Doc. No. 11). The Debtors filed a response to the Motion, objecting to the Dismissal of their case. (Doc. No. 20). A Hearing was then held on the matter. At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the opportunity to further consider the evidence and arguments submitted by the Parties. (Doc. No. 35). During this time, the Debtors filed, with approval of the Court, a brief entitled "Post-Trial Statement of Fact/Explanation." (Doc. No. 40). No response to this brief was filed by the United States Trustee. The Court has now had the opportunity to review all of the arguments and evidence submitted in this case, and finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has merit.

## LEGAL BACKGROUND

On July 11, 2008, the Debtors filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. "In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." *Schultz v. U.S.*, 529 F.3d 343, 346 (6th Cir. 2008). It is well-established, however, that a debtor has no constitutionally protected right to receive a discharge in bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *U.S. v. Kras*, 409 U.S. 434, 445-446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Bankruptcy is, instead, a legislatively

created benefit that Congress may withhold at its discretion. To that end, Congress has prescribed conditions under which a debtor's bankruptcy case must be dismissed. *In re AC Rentals, Inc.*, 325 B.R. 339 (Table) (10th Cir. B.A.P. 2005). When, as here, a debtor seeks relief under Chapter 7 of the Bankruptcy Code, the conditions mandating dismissal are set forth in § 707.

For its Motion, the UST cited to three provisions under § 707(b) as the basis for dismissal: § 707(b)(1), § 707(b)(2) and § 707(b)(3). At the Hearing held in this matter, however, the United States Trustee withdrew that portion of its Motion which, as a basis for dismissal, cited to § 707(b)(2). Accordingly, the merits of this case will be predicated solely upon the grounds for dismissal as contained § 707(b)(1) and § 707(b)(3).

Sections 707(b)(1) and 707(b)(3) operate together, allowing a court to dismiss a debtor's bankruptcy case when the particular circumstances of the filing of the case demonstrate abuse. In relevant part, these provisions provide:

> (b)(1) After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider-
>
> > (A) whether the debtor filed the petition in bad faith; or
> >
> > (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

Under this statutory framework, it may thus be said that § 707(b)(1) and § 707(b)(3) operate in a hierarchical fashion, with § 707(b)(1) first setting forth the foundational requirement, providing for

Page 2

the dismissal of case when abuse is found to exist, and then § 707(b)(3) providing a methodology by which to assess the existence of abuse under § 707(b)(1).

In seeking to have the Debtors' bankruptcy case dismissed in accordance with § 707(b)(1) and § 707(b)(3), the United States Trustee relied heavily on what it perceived as the Debtors' ability to repay their unsecured creditors. In its own words: "When viewed comprehensively, the debtors['] financial circumstances show that they can make an effort to repay their creditors, with minor adjustments in their lifestyle." (Doc. No. 11, at pg. 8). Thus, according to the UST, "it would be an abuse for the debtors to receive a discharge." *Id.* at pg. 9. As now set forth, a number of facts, regarding this position of the UST, were not disputed.

## FACTS

The Debtors, Tirrell T. Brenneman and Kristian K. Brown, are married and have three young children. Mr. Brenneman is employed as an administrator with the Toledo Public Schools; Mrs. Brown set forth that she is employed as an "Anchor/Reporter" for a local television station. Mr. Brenneman has maintained his employment with the Toledo Schools for seven and one-half years; Mrs. Brown has been employed as an Anchor/Report for five and one-half years.

In his position as a school administrator, Mr. Brenneman earns a gross monthly salary of $4,564.91, amounting to $54,778.92 annually. In addition, Mr. Brenneman frequently supplements his income by working for school-sponsored extracurricular activities such as coaching sports. Although this additional income is not guaranteed, and can vary from year-to-year, Mr. Brenneman's most recent financial figures show that, on an annual basis, he earned an additional $5,000.00 as the result of this supplemental work. From her employment, Mrs. Brown earns a gross monthly salary of $5,854.00, or $70,248.00 annually.

Page 3

**In re: Tirrell Brenneman/Kristian Brown**
**Case No. 08-33644**

Together, the Debtors' salaries provide their household with a yearly income of at least $125,026.92. After accounting for deductions, including a $129.13 per month deduction for the repayment of a 401(k) loan, the Debtors represented that this level of income provides their household with $6,779.32 in net monthly income. Excluded from this calculation, however, were those funds the Debtors overpay on their tax liability. This amount the Debtors approximate at $479.08 per month, thereby providing the Debtors with $7,258.40 in actual net monthly income. *See In re Gonzalez*, 378 B.R. 168, 175-76 (Bankr. N.D.Ohio 2007). (the overpayment of a tax liability constitutes income for purposes of § 707(b)(3) so long as it appears that the debtor is continuing to overpay his or her taxes).

Against their income, the Debtors claimed $7,259.68 in necessary, monthly expenses, thus resulting in a slight shortfall, ($1.28), in the Debtors' monthly budget. The Debtors' budgeted expenses included, but were not limited to the following itemized expenditures:

$1,378.32 for housing which includes two mortgage payments and a monthly allocations for taxes and insurance;

$1,000.00 food;

$250.00 clothing;

$153.00 student loan;

$161.00 auto insurance

$ 35.00 auto maintenance

$500.00 for transportation costs such as gas;

$120.00 laundry and dry cleaning;

$250.00 of work related expenses for Mrs. Brown; and

Page 4

In re: Tirrell Brenneman/Kristian Brown
Case No. 08-33644

$1,088.33 for child care.

At the time they filed their petition for relief, the Debtors were insolvent, reporting assets of $340,804.00, versus liabilities of $776,891.18. The Debtors' assets included three interests in real property: (1) their residence, valued at $165,000.00; (2) a rental property, having an assigned worth of $75,000.00; and (3) a time share in the Bahamas, valued at $3,500.00. At the time their petition was filed, the Debtors' interest in these properties was also subject to secured claims which either equaled or exceeded the value of the collateral. In their original statement of intention, the Debtors set forth that they intended to reaffirm on the obligations secured against their residence and Mr. Brenneman's time share, while surrendering their interest in the rental property. The Debtors later revised their intention regarding Mr. Brenneman's timeshare, having decided to surrender it.

The Debtors' personal property included the following items of significance: (1) a 401(k) account held by Mrs. Brown, having a value of $5,000.00; and (2) a public employee, defined-benefit pension plan in Mr. Brenneman's name, having a value of $48,651.00. In addition, as personalty, the Debtors reported in their bankruptcy schedules an interest in three automobiles:

(1) a 2003 Ford Excursion, worth $13,000.00, and secured by a claim of $21,764.00;

(2) a 2008 Toyota Tundra, having a present value of $25,000.00, and secured by a claim of $37,000.00; and

(3) a 2008 Toyota Sienna, which is leased, and whose value was not disclosed by the Debtors.

In their statement of intention, the Debtors set forth that they intended to surrender their interest in the 2003 Ford Excursion, while reaffirming on the obligations attached to both of their 2008 vehicles. The obligations regarding the 2008 vehicles were incurred just prior to the Debtors'

Page 5

In re: Tirrell Brenneman/Kristian Brown
Case No. 08-33644

bankruptcy filing and require a total monthly expenditure of $1,278.03 – $624.03 for the Sienna and $654.00 for the Tundra.

The Debtors' liabilities comprise secured debt totaling $328,186.00, and unsecured debt totaling $448,705.18. The real property and vehicles, discussed *supra*, account for all of the Debtors' secured obligations. The Debtors' unsecured obligations may be divided, generally, into three categories. First, both of the Debtors owe significant sums on student-loan obligations, with Mrs. Brown setting forth $95,960.00 in educational debt, while Mr. Brenneman listed a balance of $119,891.00 owed on various student-loan accounts. Second, Mr. Brenneman set forth a liability stemming from an auto accident, potentially totaling $190,000.00. The remainder of the Debtors' unsecured obligations, approximately $50,000.00, consisted mainly of credit-card accounts.

### DISCUSSION

This matter is before the Court on the Motion of the United States Trustee (hereinafter the "UST") to Dismiss the Debtors' bankruptcy case. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are deemed to be core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). And as a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

It has been Congressional policy toward the Bankruptcy Code to encourage debtors to repay their debts. *See, e.g., In re Copper*, 426 F.3d 810, 814 (6th Cir. 2005) (observing that the rationale for readily granting conversion under § 706 is to encourage debtors to repay their debts). It has also been Congressional policy to limit bankruptcy relief to those debtors truly in "need" of such relief. *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989). Consistent with these policies, a debtor's ability to repay their unsecured debts has developed to become a prime, and often dispositive consideration

Page 6

**In re: Tirrell Brenneman/Kristian Brown**
**Case No. 08-33644**

when determining whether, under the 'totality of the circumstances' standard of § 707(b)(3)(B), a case should be dismissed for abuse. *In re Masella*, 373 B.R. 514, 518 (Bankr. N.D.Ohio 2007). As observed by the Sixth Circuit Court of Appeals: dismissal for "abuse is intended to uphold creditors' interests in obtaining repayment where such repayment would not be a burden." *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989) (internal quotations omitted), *citing In re Kelly*, 841 F.2d 908, 914 (9th Cir. 1988).

For its position, that the Debtors have the ability to repay their debts, the UST took issue with the propriety of a number of the Debtors' budgetary figures. Most prominently, the UST put forth that those expenses the Debtors set forth for transportation, the repayment of their educational debts and the repayment of an advance taken against Mrs. Brown's 401(k) account, are either excessive or not permissible, and therefore are not properly considered when determining the Debtors' ability to repay their debts. Additionally, on the income side of the equation, the UST pointed out that the Debtors are both employed, they both have stable employment and they both enjoy an annual income well above the state-median income. (Doc. No. 11).

A debtor's ability to repay their debts is normally ascertained by reference to the amount of "disposable income" the debtor has available. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435 (6th Cir. 2004). For purposes of bankruptcy law, the term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. *Id., citing* 11 U.S.C. § 1325(b)(2). This assessment, as to the amount of "disposable income" available to a debtor, is made exclusively by the court, and is thus not dependent on the financial figures put forth by the debtor or any other party. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007).

Within this legal framework, all those points made by the UST have been previously addressed by the Court, and support a finding that the Debtors have the ability to repay their debts.

Page 7

**In re: Tirrell Brenneman/Kristian Brown**
**Case No. 08-33644**

First, the Debtors' high level of income, alone, makes this Court skeptical of their need for Chapter 7 bankruptcy relief. The reason for this is axiomatic: there exists a large degree of incongruity between a high level of income and an inability to repay, at least a percentage, of one's debts. As this Court previously noted when applying § 707(b)(3): "Under any measure, a debtor, having a stable annual salary of almost $100,000.00, will be hard pressed to establish that they do not have the ability to pay some of their unsecured debt, such as through funding a Chapter 13 plan of reorganization." *In re Wadsworth*, 383 B.R. 330, 334 (Bankr. N.D.Ohio 2007).

The evidence in this regard is particularly compelling. It shows that the Debtors are both employed in positions which afford them a combined yearly salary of more than $125,000.00. This is substantially above the median income for a family of five in Ohio which, at the time the Debtors filed for bankruptcy relief, stood at $77,432.00.[1] Additionally, the Debtors receive benefits such as medical insurance and retirement benefits through their respective places of employment. Mr. Brenneman also has the opportunity to supplement his income by as much as $5,000.00 per year by teaching extracurricular activities.

Finally, no indication was given by either of the Debtors that, for the foreseeable future, their employment would be placed in jeopardy. The Debtors' salaries thus appear sufficiently stable to support regular payments on their unsecured debt. Past trends only lend further weight to this conclusion. Mr. Brenneman has been with his employer for seven and one-half years; Mrs. Brown has been with her employer for five and one-half years.

Those issues raised by the UST concerning the expense side of the Debtors' budget are also correct. First, this Court, absent special circumstances, has not permitted debtors to expense against

---

[1] http://www.usdoj.gov/ust/eo/bapcpa/20080317/bci_data/median_income_table.htm

Page 8

In re: Tirrell Brenneman/Kristian Brown
Case No. 08-33644

their 'disposable income,' funds allocated to repay loans on retirement accounts and educational obligations. *In re Gonzalez*, 378 B.R. at 174 (addressing contributions to retirement accounts); *In re Kaminski*, 387 B.R. 190, 197 (Bankr. N.D.Ohio 2008) (addressing educational debts). The reasoning for these decisions rests on the core principle of bankruptcy law that similarly situated creditors are entitled to an equal distribution of estate assets. *In re CSC Industries, Inc.*, 232 F.3d 505, 508 (6th Cir. 2000). Thus, insofar as it concerns retirement accounts, this Court explained:

> Loan repayments to retirement accounts are considered 'disposable income' because of their unique character; the debtor is, in essence, repaying a loan to himself. Thus, . . . . it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.

*In re Gonzalez*, 378 B.R. at 174 (internal citation and quotation omitted). In a similar manner, this Court has noted that for educational debts, their nondischargeable character "does not, on that basis alone, mean that a debtor has the right to treat the claim differently. Otherwise, all nondischargeable debts would be entitled to favorable treatment, including those debts which arise from a debtor's wrongful conduct- *e.g.*, fraud, embezzlement and larceny." *In re Kaminski*, 387 B.R. at 197.

But what is especially disconcerting for the Court are those resources the Debtors allocate for their transportation needs. When assessing the totality of the circumstances, this Court, looking to the 'means test' of § 707(b)(2) for guidance, has not permitted debtors to allocate excessive and unnecessary sums of money to pay for transportation. *In re Violanti*, Case No. 08-33329, pg. 9 (Bankr. N.D.Ohio Nov. 4 2008). Contrary to this precedent, however, the Debtors seek to allocate for their transportation needs, and hence away from their unsecured creditors, an amount which is almost 50% greater than what would be otherwise permitted under the 'means test' of § 707(b)(2).

Page 9

In re: Tirrell Brenneman/Kristian Brown
Case No. 08-33644

In specific terms, when determining whether abuse existed for purposes of the 'means test' of § 707(b)(2), the Debtors were permitted to expense against their monthly income the amount of $1,344.00.[2] By comparison, the Debtors have allocated $1,974.03 for their actual monthly transportation expense – this number being compromised of $1,278.03 to service the debt on two automobiles, $500.00 for other transportation related costs such as gas, $161.00 for insurance and $35.00 for maintenance.

To be sure, the Debtors, as they pointed out, are permitted those costs necessary to maintain reliable and safe transportation for themselves and their family. But when, as here, such costs become skewed, against what would normally be expected from debtors who asserts an inability to repay their debts, the burden is on them to show the necessity of the expense. *Id.* This may be accomplished, for example, by putting forth evidence that a large transportation expense is directly related to a remunerative purpose or that less expensive transportation alternatives are not available. *Id.* No evidence of this character, however, was provided and, in the absence of such evidence, the Court simply cannot accept that the only safe and reliable transportation available to Debtors necessitates the expenditure of almost $2,000.00 per month.

Despite, however, the impermissibility of some of their expenses, the Debtors asked that, in assessing their ability to repay their creditors, the Court consider the fact that they have made a good faith effort to minimize their expenses in other areas of their budget. For example, the Debtors called the Court's attention to the special efforts they have made to keep their childcare expenses to a minimum. In addition, the Debtors pointed out that they have lowered their monthly tithing from $325.00 to just $50.00. (Doc. No. 40).

---

[2] http://www.usdoj.gov/ust/eo/bapcpa/20080317/bci_data/IRS_Trans_Exp_Stds_MW.htm

Page 10

In re: Tirrell Brenneman/Kristian Brown
Case No. 08-33644

In certain areas, the Court does not question that the Debtors have made an effort to restrict their spending. Yet, not all areas of the Debtors' budget match this trend, with the Debtors' efforts to lower their expenses seeming more strained than real. First, as already discussed, the Debtors seek to reaffirm on those obligations secured against their vehicles, with the costs necessary to service the obligations falling well outside the bounds of reasonableness given their circumstances. Additionally, while not saying each is excessive in isolation, when viewed globally these four categories of the Debtors's monthly expenditures cannot be said to represent a good faith effort to minimize expenses: $1,000.00 food; $250.00 clothing; $120.00 laundry and dry cleaning; and $250.00 of work related expenses for Mrs. Brown.

It also doesn't bode well that Mr. Brenneman sought to reaffirm on his timeshare when he filed for bankruptcy relief. To be sure, Mr. Brenneman later changed his stated intention. But this change seems disingenuous considering that it only occurred after the UST filed its Motion to Dismiss. The Court does recognize that Mr. Brenneman sought to reaffirm on the timeshare because the obligation was incurred jointly with an ex-girlfriend to whom he had promised to assume his part of the bargain. But there comes a point where such a justification loses efficacy, and with bankruptcy law intended to be used as a last resort, the filing of a petition under Chapter 7 of the Bankruptcy Code marks just such a point. *Matter of Smith*, 848 F.2d 813, 817 (7th Cir.1988) (use of bankruptcy law should be a matter of last resort).

On whole, therefore, it is the finding of the Court that the Debtors can, without depriving their household of any necessities, make reasonable downward adjustments in their monthly expenditures. Furthermore, the vast majority of the funds made available by such adjustments could then be used by the Debtors to repay their unsecured creditors considering that, in the absence of any adjustments, the Debtors' present household budget shows only a negligible monthly shortfall of ($1.28).

Page 11

In re: Tirrell Brenneman/Kristian Brown
Case No. 08-33644

Notwithstanding, the Debtors set forth that, even if they were to make adjustments to their monthly budget, any attempt to repay their unsecured creditors, such as through formulating a Chapter 13 plan of reorganization, would be a futile act. For this position, the Debtors made two related points. First, they stated that should they "not be allowed to receive their Chapter 7 Discharge and having the only option of filing a Chapter 13, when the time is up in five years the Debtors would owe substantially more on their student loans than they did going into it, while the student loans received the majority of the disbursements by the Trustee after the payment of priority taxes." (Doc. No. 40, at pg. 5). Second, the Debtors pointed out the reality that given the size of their unsecured debt, $448,705.18, any plan of reorganization would result in a small return to their unsecured creditors.

Both of the points raised by the Debtors can have viability. For example, in *In re Stewart*, this Court noted that "all other things being equal, abuse under § 707(b) is more likely to be found when the debtor has the ability to repay a significant portion of his unsecured debt." 383 B.R. 429, 435 (Bankr. N.D.Ohio 2008). More recently, in the case of *In re Thurston*, this Court denied the motion of the UST to dismiss under § 707(b)(3) when two conditions were present: First, there existed a large student-loan obligation which, given its nondischargeable character, would continue to increase in principal during the duration of a Chapter 13 plan; and second, the distribution to the debtor's other unsecured creditors would be minimal. Case No. 07-35092, Slip Copy, 2008 WL 3414138 (Bankr. N.D.Ohio 2008). At the same time, the Court's decision *In re Thurston* helps to illustrate why the points raised by the Debtors do not mitigate against dismissal in their case.

Unlike with the Debtors' situation, the decision in *In re Thurston* was predicated on more than just a negligible distribution to unsecured creditors and the potentiality of a student-loan obligation to accrue in principle during the course of a Chapter 13 plan. Instead, the decision of *In re Thurston* was also predicated on the debtor having made a good faith effort to minimize her expenses. *Id.* * 6. Specifically, the Court noted in *In re Thurston* that the debtor only allocated

Page 12

In re: Tirrell Brenneman/Kristian Brown
Case No. 08-33644

$50.00 dollars per month for an automobile payment. *Id*. While not implying that such a low monthly transportation is required when defending against a § 707(b)(3) motion to dismiss, the Debtors' situation in this case goes to the opposite extreme.

The Debtors allocate $1,278.03 per month to service the debt on their two automobiles. Such a substantial outlay for two automobiles resembles more of an expense incurred for luxury items as opposed to necessities. *In re Oot*, 368 B.R. 662, 669 (Bankr. N.D.Ohio 2007) (finding two auto payments of $1,560.00 per month was an expenditure for luxury goods). Put another way, the Debtors, by acknowledging that they can afford $1,300.00 per month in vehicle payments, have gone a long way in demonstrating that they have some ability to repay their creditors. Nor is the Debtors' ability to repay their debts the only concern of the Court.

In determining whether abuse exists under § 707(b), the Sixth Circuit Court of Appeals set forth that a bankruptcy court should consider whether a debtor engaged in any eve of bankruptcy purchases. 886 F.2d at 126. This adds a particularly problematic dimension to the Debtors' bankruptcy filing, with the Debtors having purchase both of their 2008 vehicles in the time period immediately preceding their bankruptcy. Further, the Debtors now seek, by their stated intention to reaffirm these obligations, to use the bankruptcy process to retain these vehicles, despite their high cost. *See In re Haar*, 360 B.R. 759, 768 (Bankr. N.D.Ohio 2007) (a debtor who seeks to reaffirm on a high amount of secured debt, especially luxury items, may be subject to an action to dismiss under § 707(b)(3)). The bankruptcy process, however, was never meant to be used in such a manner – in essence allowing debtors to perpetuate their bad financial decisions. *In re Kaminski*, 387 B.R. at 196.

It is also true that bankruptcy is meant to provide a debtor with a fresh start, but not a head start. *In re Wadsworth*, 383 B.R. 330, 334 (Bankr. N.D.Ohio 2007). As such, individuals, such as the Debtors in this case, who seek to reaffirm on a large amount of secured debt, which effectively

Page 13

In re: Tirrell Brenneman/Kristian Brown
Case No. 08-33644

deprives unsecured creditors of a debtor's financial resources, are not viewed with favor in a proceeding brought to dismiss under § 707(b)(3). Simply put, the reaffirmation process in a Chapter 7 bankruptcy was not meant to be used as a device by which debtors could retain unnecessary property to the detriment of their unsecured creditors. This is especially true since the revision to § 707(b), as effectuated by the Congressional Act known as BAPCPA, which relaxed the standard for dismissal, and eliminated the benefit afforded to the debtor that relief under Chapter 7 should be presumed.[3] *See, e.g., In re Oot*, 368 B.R. 662 (Bankr. N.D.Ohio 2007) (attempt by a debtor to reaffirm on a large amount of unsecured debt is especially problematic under BAPCPA).

Put within this context, the Court simply cannot reconcile the Debtors' actions of purchasing two expensive vehicles on the eve bankruptcy, with the picture, ensconced in bankruptcy law, that either Mr. Brenneman or Mrs. Brown is representative of the honest but unfortunate debtor in need of Chapter 7 relief. *Grogan v. Garner*, 498 U.S. 279, 286, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To hold otherwise, would reward the Debtors for what can only be viewed as an attempt to manipulate the bankruptcy process, and thus would set a bad precedent.

Accordingly, for all these reasons, the holding of this Court may be summarized as follows: First, the Debtors, given their significant financial resources, have the ability to make reasonable adjustments to their monthly budget which would result in the availability of funds which could then be used to pay their unsecured creditors. Second, based upon the Debtors' eve of bankruptcy purchase of two expensive vehicles, the Court will disregard that any Chapter 13 plan proposed by the Debtors may not, given their substantial unsecured debt, result in a high-percentage distribution to unsecured creditors.

---

[3] BAPCPA stands for the Congressional Act entitled Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Public Law 109-8, 119 Stat. 23.

Page 14

**In re: Tirrell Brenneman/Kristian Brown**
**Case No. 08-33644**

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Friday, December 5, 2008, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

***IT IS FURTHER ORDERED*** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

Dated: November 18, 2008

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 15

# CERTIFICATE OF SERVICE

Copies were mailed this 18th day of November 2008 to:

Tirrell T. Brenneman
2616 Glendale Ave
Toledo, OH 43614-2606

Kristian K. Brown
2616 Glendale Ave
Toledo, OH 43614-2606

Elliot H Feit
520 Madison Ave
930 Spitzer Building
Toledo, OH 43604

Michael R. Proctor
120 E. 4th St. #800
Cincinnati, OH 45202

Cara R. Hurak
1900 Fifth Third Center
511 Walnut Street
Cincinnati, OH 45202

HSBC Bank Nevada, N.A./Bass & Associates, P.C.
3936 E. Ft. Lowell Road, Suite #200
Tucson, AZ 85712

Patti H. Bass
3936 E. Ft. Lowell Rd. #200
Tucson, AZ 85712

Howard B Hershman
One SeaGate #1645
Toledo, OH 43604-1584

Dean Wyman ust03
Office of the US Trustee
201 Superior Aveneue, Suite 441
Cleveland, OH 44114-1240

Louis J Yoppolo
1200 Edison Plaza
300 Madison Ave
Toledo, OH 43604-1556

Patti H. Bass
3936 E. Ft. Lowell Rd.
#200
Tucson, AZ 85712

    /s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court